## STALEY et al. v. VAUGHN.
### No. 3815.

Court of Civil Appeals of Texas. Amarillo.
May 18, 1932.

Rehearing Denied June 8, 1932.

Harry L. Carter, of San Antonio, John C. Kay, of Wichita Falls, and J. W. Akin, of Tyler, for appellants.

Killough & Dotson, of Vernon, for appellee.

JACKSON, J.

The appellants Fleta Staley and her husband, C. R. Staley, instituted this suit in the district court of Wilbarger county against E. L. Vaughn, J. Shirley Cook, R. L. Rheay, and Wm. Cameron & Co., Inc., seeking to have declared null and void as to Fleta Staley a judgment of the district court of Wilbarger county, obtained against them as defendants in cause No. 2997 by Wm. Cameron & Co., Inc., as plaintiff.

The record discloses that in cause No. 2997 the plaintiff, Wm. Cameron & Co., Inc., sued the defendants C. R. Staley and Fleta Staley in the district court of Wilbarger county in 1921 to recover a balance of $4,427.15 and to foreclose its alleged mechanic's lien on the East one-half of the S. W. one-fourth of block No. 14 of the Texas Townsite Company's addition to the town of Vernon. The plaintiff alleged that it had sold and delivered to the defendants under an oral contract certain building material to be used, and which was used, in the construction of a brick bungalow on said real estate; that the defendants failed to pay said balance, as contracted, and on December 14, 1920, the plaintiff filed and had recorded in the office of the county clerk of Wilbarger county, Tex., its itemized and verified account of the material it had furnished, and thereby fixed its materialman's lien on said land and improvements. The defendants answered on September 15, 1921, by a general denial, pleaded that the premises were the separate property of Fleta Staley, and were used and occupied and constituted the homestead of the defendants and their family; that the building material furnished by the plaintiff was not contracted for in writing by the defendants as husband and wife, nor with the consent of Fleta Staley as the law required, and therefore the alleged lien was void and unenforceable.

In a supplemental petition the plaintiff denied that the premises were the homestead of the defendants at the time the material was furnished, and charged that, if the land was the separate property of Fleta Staley, the material delivered was contracted for by both the defendants, and was used in the necessary improvement of her land, and she was justly indebted to plaintiff for the material. The plaintiff, at a regular term of the district court of Wilbarger county, on March 27, 1928, recovered judgment against the defendants for the sum of $6,425.45, in which it was decreed that the premises were the separate property of Fleta Staley; that the debt was created for material furnished for the construction of the improvements on her said property, and plaintiff had a valid lien to secure the payment of said indebtedness. The lien was foreclosed and the property ordered sold as under execution for the payment of the debt.

Wm. Cameron & Co., Inc., on March 29, 1928, for a consideration of $2,250, properly transferred and assigned the judgment in said cause to E. L. Vaughn. The judgment became dormant, and on July 17, 1930, E. L. Vaughn, as plaintiff, filed cause No. 5213 in the district court of Wilbarger county against C. R. Staley and Fleta Staley, as defendants, to revive said judgment and for the foreclosure of the lien therein described. The defendants answered in cause No. 5213, by a general denial, and alleged that the property constituted their homestead. E. L. Vaughn, at a regular term of the district court of Wilbarger county, on the 20th day of September, 1930, obtained judgment in said cause against the Staleys. It recites that the defendants withdrew their answer, and adjudges that the Staleys were indebted to Vaughn in the sum of $7,280.35, as evidenced by the judgment in cause No. 2997, and decrees that E. L. Vaughn recover said amount from the Staleys and have a foreclosure of his lien on the property, and directed a sale thereof as under execution for the satisfaction of the debt.

The appellants also attack the judgment in cause No. 5213 as void and unenforceable, and prayed that the defendants be perpetually enjoined from selling said property and the collection and enforcement of said judgment.

An order of sale was issued by the district clerk of Wilbarger county on the 9th day of July, 1931, on the judgment in cause No. 5213, commanding the sheriff of the county to seize and sell the property as under execution, and make a good and sufficient deed to the purchaser thereof. This order was properly executed by said officer, and on August 4, 1931, by a deed of the sheriff of said county, the real estate and improvements thereon were conveyed to E. L. Vaughn for a consideration of $2,000.

On February 2, 1924, there was filed and recorded in the county clerk's office of Wilbarger county, Tex., by the Internal Revenue Department of the United States, in compliance with the acts of Congress, a notice of tax lien to the effect that there had been assessed under the internal revenue laws taxes in the sum of $10,250 against Mrs. C. R. Staley, which had not been paid, and the amount of said taxes, together with interest, penalties, and costs that might accrue in addition thereto, constituted a lien in favor of

the United States upon all property and rights to property belonging to said taxpayer.

Fleta Staley, joined pro forma by her husband, C. R. Staley, on April 4, 1928, executed to Raymond R. Donaghey, as trustee for E. L. Vaughn as beneficiary, a deed of trust on said real estate and improvements to secure the payment of $6,425.45, the amount evidenced by the judgment in cause No. 2997; also to secure the additional sum of $2,500, evidenced by a duly executed promissory note of even date therewith, bearing interest from date at the rate of 10 per cent. per annum. The deed of trust recites that the judgment is a valid and subsisting lien on said property; that the money evidenced by the note for $2,500 was advanced by E. L. Vaughn at the request of Mrs. Staley and her husband, and used to compromise, settle, and discharge the income tax assessment by the United States against Mrs. Staley and to avoid the distraint of the land and premises and the seizure and sale thereof by the government in satisfaction of said taxes, and subrogates E. L. Vaughn to all the rights of the government in and to said property.

Raymond R. Donaghey, as trustee, on June 2, 1931, after the defendants had defaulted, and after complying with the terms and provisions of the deed of trust, sold the property under the provisions thereof and the requirements of the statutes at public auction to E. L. Vaughn, the highest and best bidder, for the sum of $4,750, and executed a trustee's deed conveying the property to him.

No question is presented as to the sufficiency of the pleadings of either party in the instant case to authorize the issues that were submitted to the jury and the judgment rendered by the court thereon.

In response to the special issues submitted, the jury found, in effect, that the property involved was the homestead of the appellants at the time the income tax lien of the government was filed with the county clerk of Wilbarger county, and also at the time the lien of Wm. Cameron & Co., Inc., was filed with said clerk; that Mrs. Staley was not present at the trial of either cause No. 2997 or cause No. 5213, but that Mr. Shirley Cook advised her of the date on which cause No. 2997 was to be tried, and informed her of the judgment of the court therein immediately after it was rendered; that Mr. Cook, at the time he filed suit No. 5213, to revive the judgment in No. 2997, or some time prior thereto, informed Mrs. Staley and her husband that he no longer represented them; that Mrs. Staley received a citation in cause No. 5213; that Mr. Cook did not advise her that she need pay no attention thereto, as the judgment in No. 2997 was dormant; that she knew on September 20, 1930, that her attorneys had withdrawn her answer in cause No. 5213, and knew on said date and prior to March, 1931, that Mr. Cook was not representing her in No. 5213; that she authorized Mr. Cook to negotiate with E. L. Vaughn for the purchase of the judgment in No. 2997; that both Mr. Cook and Mrs. Staley represented to Mr. Vaughn at the time he purchased said judgment that it was valid and foreclosed a lien against the property; that Mr. Vaughn believed and relied on such representations; that Mrs. Staley authorized Mr. Cook to negotiate with E. L. Vaughn with the view of getting him to advance to and pay the United States government the sum of $2,500 in settlement of the income taxes due the government; that both Mrs. Staley and Mr. Cook represented to Mr. Vaughn that the taxes due the government were secured by a valid lien on the property; that Vaughn believed and relied on the representations; that Mrs. Staley agreed to the rendition of the judgment in cause No. 2997 in consideration of the agreement of Wm. Cameron & Co., Inc., to release said judgment upon the payment to it of $2,250 or to transfer the judgment to such person as the Staleys might designate, upon the payment of said amount.

On this verdict the court rendered judgment that the plaintiffs take nothing by their suit, and that defendant E. L. Vaughn have and recover from the plaintiffs the title and possession to the property involved in this controversy.

Wm. Cameron & Co., Inc., J. Shirley Cook, and R. L. Rheay were discharged by the judgment, and no complaint is made on account thereof.

The findings of the jury, which have sufficient support in the evidence, eliminate all issues pleaded by appellants pertaining to their lack of notice and knowledge of the trials of suits No. 2997 and No. 5213, and exonerate all the defendants from the fraud and conspiracy alleged against them, and the judgment of the court based on such findings is conclusive on such issues.

The appellants, by proper assignments, assert that the judgments in the suits Nos. 2997 and 5213 were void, because the jury found on sufficient testimony that the property in controversy was their homestead at the time Wm. Cameron & Co., Inc., filed its lien with the county clerk of Wilbarger county, and the record shows without controversy that appellants never executed a written contract as provided by the Constitution and laws of the state for creating a lien against their homestead.

The appellee replies that the validity of the lien was an issue in causes Nos. 2997 and 5213, and that the judgments in said suits foreclosing said lien are res judicata as to the validity thereof and are binding on appellants.

910

In Baxter v. Owen Dear, Administrator, et al., 24 Tex. 17, 76 Am. Dec. 89, the appellant Baxter sued Tobias Furr and Sarah W. Furr, his wife, on a note executed by them to him, which he alleged was secured by a lien on two tracts of land. Tobias Furr died and his administrator, who was made party to the suit, adopted the answer theretofore filed by the defendants, containing a general exception and general denial. Mrs. Furr, in an amended answer, set up in detail the facts surrounding the execution of the note sued on, pleaded that the lien sought to be foreclosed was invalid, as it was a mortgage on the homestead; that she and her husband had given another note at the time the note sued on was executed; that the appellant, as plaintiff in a former suit numbered 1124, had recovered judgment on the other note, with an order to sell the property, including her homestead; that she had relied on her husband in said suit No. 1124 to protect the homestead, but he had failed to inform the attorney who represented them of their defenses. She asked that the judgment in cause No. 1124 be reformed so as to exempt the homestead therefrom, and that the homestead property be excluded from any judgment or order of sale in the suit then pending. The trial court sustained Mrs. Furr's contention, revived the judgment in cause No. 1124, and set apart the land claimed as a homestead to Mrs. Furr for the use and benefit of herself and family. In reviewing the action of the trial court, the Supreme Court said:

"The counsel for the appellee, Mrs. Sarah W. Furr, has argued, with great ingenuity and force, that inasmuch as the appellant, Baxter, was driven, after the death of Tobias Furr, to ask the interposition of the court, to revive the judgment in the case numbered 1124, the court, acting as a court of equity, might require the plaintiff in that cause, to consent to the revival of the judgment, upon such terms as would exempt the homestead of Mrs. Furr from the operation of the judgment, after its revival, inasmuch as a true construction of the original contract upon which that judgment was obtained, would have saved the homestead rights of Mrs. Furr. It cannot be doubted, that the contract entered into between the appellant and Tobias Furr, and Sarah W. Furr, on the 5th day of March, 1856, was nothing more, in legal effect, than a mortgage by Tobias Furr and his wife, to secure to Baxter the payment of the sum of money due him by Tobias Furr. And if the homestead rights of the wife, Sarah W. Furr, had been properly presented to the court, on the trial of the cause, numbered 1124, the court would have protected those rights, by a suitable decree. But it appears, that, on the trial of the cause, numbered 1124, Mrs. Sarah W. Furr was represented by an attorney, who acted for her, and filed an answer in her name. The judgment in that case recites, that the parties appeared, by their attorneys, and waived a jury, and submitted their matters to the court, etc. This court has never gone so far, as to hold that such a judgment can be inquired into, upon equitable considerations; and we have not been able to find any case, in which a court of equity has assumed the power to set aside the solemn judgment of a court of competent jurisdiction, to enable a party to present a defence, which might have been presented in the first suit, and where no fraud is shown in obtaining the first judgment. * * *

"We think that Mrs. Furr ought to have asserted her homestead rights when the cause numbered 1124 was pending; and that it was not competent for the court, in the trial of cause numbered 1334, to go behind the judgment of the court in the cause numbered 1124, and make a decree that would restrain the execution of the judgment that had been rendered in the last mentioned cause."

In Nichols v. Dibrell, 61 Tex. 539, the Supreme Court holds that the decision of a court of competent jurisdiction is conclusive as to the subject-matter determined and the other matters which the parties might have litigated; stating, with reference to the principle of res judicata, that: '

"It has been applied, as will be seen from the above authorities, to cases in which the wife was a party to the previous suit, and have held her bound by the judgment in the same manner as any other litigant. Howard v. North, 5 Tex. 290 [51 Am. Dec. 769]. * *

"The homestead right is not of a character to make it an exception to the rule we have announced as to the plea of res judicata. It has been frequently attempted in this state to exempt it from the operation of the rule, but it has always been held that when it might have been pleaded in the former suit it was too late to set it up in the latter. Thus, where a mortgage has been foreclosed upon the homestead and a second suit has been brought by the purchaser at the mortgage sale, it is held that it is too late to set up the homestead right as a bar to the last action."

In Beer et al. v. Thomas et al., 13 Tex. Civ. App. 30, 34 S. W. 1010, 1012, the court holds that: "The judgment involves more than a mere abandonment or waiver of homestead rights. It establishes the plaintiff's lien on the property, and his right to have the latter sold to pay the debt; and this involves an adjudication that no reason—the fact of the property being the homestead, or other fact—existed to defeat the lien." See, also, Woolley et al. v. Sullivan et al., 92 Tex. 28, 45 S. W. 377, 46 S. W. 629; Gamel et al. v. City National Bank of Colorado, Texas (Tex. Com. App.) 258 S. W. 1043.

■ In order to reopen litigation that has been concluded by a judgment, by a bill of review, the party seeking relief is required to allege and prove that he was prevented from making his defense to the action in which the judgment was rendered, by fraud or accident or the acts or conduct of his adversary, without fault or negligence on his part. Plummer v. Power, 29 Tex. 7; Nichols v. Dibrell, supra; City National Bank of Colorado, Texas v. Gamel et al. (Tex. Civ. App.) 241 S. W. 735; Spence et ux. v. State National Bank of El Paso (Tex. Com. App.) 5 S.W.(2d) 754.

■ Fraud, accident, and the acts and conduct of the adverse parties to the litigation are settled against the appellants by the findings of the jury. The judgments in causes Nos. 2997 and 5213 foreclosing the lien on the property involved are authorized by the pleadings of the parties in said causes, and the foreclosure of the lien is res judicata of its validity against the separate property and the homestead rights and binding upon the appellants in this case.

■ The appellants contend that the lien for delinquent income taxes fixed by the internal revenue laws of the United States against the property and property rights of the delinquent income tax payer creates no lien against the homestead of such delinquent in Texas, because it is exempted therefrom by the Constitution and laws of the state, and, inasmuch as the record shows conclusively that they were occupying the property as their homestead at the time appellee advanced the money to pay the income tax, they are not estopped from asserting the invalidity of such lien by their conduct or representations.

Under the facts disclosed by the record, the appellants are not estopped from attacking the income tax lien, to the rights of which the appellee was subrogated, if the lien was void, for the fact that they were occupying and using the property as their homestead at the time appellee paid the government and acquired the income tax lien is not disputed. Bayless v. Guthrie et al. (Tex. Com. App.) 235 S. W. 843.

■ Was the lien of the government, created and fixed according to the acts of Congress against the property and property rights of Mrs. Staley for her delinquent taxes, valid and enforceable against the homestead of appellants, although the Constitution of Texas (article 16, § 50) provides that:

"The homestead of a family shall be, and is hereby, protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead."

"The United States Constitution consists in a grant of powers from the states or people of the Nation; it creates a government of limited powers, vesting in the federal government only a portion of sovereignty, the residue of sovereign power and jurisdiction being reserved to the states or to the people by whom the Constitution itself was framed." 9 Tex. Jur. p. 414.

When this state was admitted into the Union, it, like the other states, conceded to the federal government the powers granted to the national government found in the Constitution of the United States.

The Constitution of the United States contains the following provisions:

Article 6, subd. 2: "This constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."

Article 1, § 8, cl. 1: "The congress shall have power—To lay and collect taxes, duties, imposts and excises to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States."

The Sixteenth Amendment to said Constitution is: "The congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

In the internal revenue laws, title 26, USCA chapter 3, § 115, among other things, it is stated: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 116, 26 USCA, stipulates that: "If any person liable to pay any taxes neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the collector or his deputy to collect the said taxes, with 5 per centum additional thereto, and interest as aforesaid, by distraint and sale, in the manner hereafter provided, of the goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debt, of the person delinquent as aforesaid, except there shall be exempt from distraint

and sale, if belonging to the head of a family, the schoolbooks and wearing apparel necessary for such family; also arms for personal use, one cow, two hogs, five sheep and the wool thereof, provided the aggregate market value of said sheep shall not exceed $50; the necessary food for such cow, hogs, and sheep, for a period not exceeding thirty days; fuel to an amount not greater in value than $25; provisions to an amount not greater than $50; household furniture kept for use to an amount not greater than $300; and the books, tools, or implements, of a trade or profession, to an amount not greater than $100 shall also be exempt," etc.

Section 117, 26 USCA, is: "In such case of neglect or refusal, the collector may levy, or by warrant may authorize a deputy collector to levy, upon all property and rights to property, except such as are exempt by section 116 of this title, belonging to such person, or on which the said lien exists, for the payment of the sum due as aforesaid, with interest and penalty for nonpayment, and also of such further sum as shall be sufficient for the fees, costs, and expenses of such levy."

In considering the homestead exemption law of Wisconsin, in Fink v. O'Neil, 106 U. S. 272, 1 S. Ct. 325, 328, 27 L. Ed. 196, the Supreme Court of the United States makes this statement: "It is said, however, that the laws of the state creating these exemptions are not laws for the United States; and this is certainly true, unless they have been made such by congress itself. This has not been an open question in this court since the decision in the cases of Wayman v. Southard, 10 Wheat. 1 [6 L. Ed. 253], and of the U. S. Bank v. Halstead, 10 Wheat. 51 [6 L. Ed. 264]."

In that case the Supreme Court holds that the United States, by appropriate legislation, had adopted the laws of Wisconsin exempting the homestead from sale under execution, and therefore the sale of the homestead under execution issued on a judgment for debt in favor of the United States should be enjoined.

"While the power of taxation is one of vital importance, retained by the states, not abridged by the grant of a similar power to the government of the Union, but to be concurrently exercised by the two governments, yet even this power of a state is subordinate to, and may be controlled by, the constitution of the United States. That constitution and the laws made in pursuance thereof are supreme. They control the constitutions and laws of the respective states, and cannot be controlled by them. The people of a state give to their government a right of taxing themselves and their property at its discretion." Van Brocklin v. Tennessee (Tenn. 1886) 117 U. S. 153, 6 S. Ct. 670, 672, 29 L. Ed 845.

The only property exempt from the income tax lien is enumerated in section 116 of the Income Tax Law. The homestead is not included in these exemptions, and we find no act of Congress adopting the homestead laws of Texas relative to the payment of income taxes. We have been unable to find any authority passing on the question here presented, but we have concluded that the lien of the government for the delinquent income taxes, having been fixed according to the act of Congress, was valid; that appellee was the owner of such lien and subrogated to the rights of the government thereunder.

If the state of Texas can by its Constitution and laws exempt the homesteads of its citizens from the income tax lien created by Congress against delinquent income tax payers, we see no reason why it could not, by amendment, exempt all the property of its citizens from such lien, and thereby protect its citizens from the forced payment of income taxes. If Texas has this authority, all the states of the Union have the same power, and could effectually defeat the government in the collection of income taxes.

No question is raised as to the regularity of the sale of the property involved under the deed of trust executed by the appellants to appellee, or the sufficiency of the trustee's deed conveying the title to said property to appellee.

The judgment is affirmed.