BERRYMONT LAND COMPANY *v.* DAVIS CREEK LAND & COAL COMPANY

(No. 8415)

Submitted April 28, 1937. Decided June 26, 1937.

*Geo. I. Neal,* United States Attorney, *Charles M. Love, Jr.,* Assistant United States Attorney, *James W. Morris,* Assistant United States Attorney General, and *Sewall Key* and *Clarence E. Dawson,* Special Assistants to

United States Attorney General, for the United States.

*Clarence W. Meadows,* Attorney General, and *Forrest B. Poling,* Assistant Attorney General, for the State of West Virginia.

Fox, Judge:

The sole question in controversy is the distribution of the sum of $2611.27, realized from the sale of real estate formerly owned by the defendant company, and now in the hands of the Court of Common Pleas of Kanawha County. This fund is claimed by both the United States Government and the State of West Virginia, under tax liens asserted by them, respectively, in this cause. The claim of the government is for 1920 income tax which has been determined to be $19,660.80; that of the state is $1814.17, made up of land property tax for the years 1924 to 1928, both inclusive, aggregating $1569.97; 1926 corporation license tax $192.00; and 1926 gross sales tax, $52.20. In view of the conclusion we have reached, it is difficult to find grounds for the sale of the real estate from which the fund in dispute arises, the state not being a formal party to the proceeding in which its property was sold, although at the time of the entry of the final decree, the Attorney General appeared in the cause on behalf of the state. This question not being raised on the record, we have treated the fund in question as representing the land upon which the liens asserted originally attached.

On April 15, 1921, the defendant company filed its income tax return for the year 1920, and in that month, the Commissioner of Internal Revenue assessed taxes against said company, based on said return, in the amount of $23,860.82, and an additional claim was subsequently made by the government. Notice of the original assessment was filed in the office of the Clerk of the District Court of the United States for the southern district of West Virginia, on November 17, 1923, under the provisions of Section 3186 of the Revised Statutes of the United States. No action was taken by the government to enforce the lien created by said section until after the institution of this suit. Its claim was then presented

and filed herein; litigation ensued with respect to the amount thereof, which was finally ascertained to be as stated above, and is not now in dispute. 110 W. Va. 305, 158 S. E. 651.

The real estate of the defendant company, from a sale of which the fund in dispute was realized, was assessed with state and local taxes for the year 1924, and said taxes not being paid, was regularly returned delinquent, thereafter sold by the Sheriff of Kanawha County for said delinquency, purchased by the State of West Virginia, and not redeemed within one year from date of sale, whereby the title thereto became vested in the state under the provisions of statutes then in force. The same procedure was followed with respect to the taxes for the year 1925, although, of course, there could be but one vesting of title in the state, and that took place under the sale for the taxes of the year 1924. This suit was instituted on the 9th day of February, 1927, after the vesting of the title to defendant company's real estate in the state had resulted from the delinquency and tax sale aforesaid. At the date of the institution of this suit, and at the time of the appointment of the special receiver for the property of the defendant company, the title to its real estate being vested in the State of West Virginia, never at any time passed into the legal control of the Court of Common pleas of Kanawha County or its special receiver.

The government perfected its lien before the taxes, which are the basis of the state's claim of title, were assessed. This was a general lien, not covering specific property, and not being asserted while the title to the property in question remained in the defendant, we think was lost, and cannot now be asserted against the proceeds of the sale of property, the title to which was, and, so far as the record discloses, is still vested in the state. Under our decisions, the rights of lienors are precluded by a sale for taxes, and the purchaser who obtains title to real estate thereby holds the same free from liens binding thereon at the date of sale. *Summers* v. *Kanawha County*, 26 W. Va. 159. We know of no reason why the government is not amenable to the rule governing private

lienors. Indeed, the intent of the government to submit itself to such rules is manifest from the provisions of Section 3186 of the federal statutes wherein it is provided, in effect, that the lien therein created may be lost as to creditors and purchasers, should their rights accrue before its filing in the District Court of the district within which the property subject to such lien is situated.

We have seen that at the time the government chose to assert its lien, title to the land of the defendant company was vested in the State of West Virginia. The Constitution and statutes under which this title passed to the state have been upheld by both state and federal courts, including the Supreme Court of the United States, and are no longer in question. Under both Constitution and statutes, title to land acquired by the state under tax purchase, or forfeiture for non-entry, may be transferred from the state to certain persons, other than those in default, upon certain conditions as to title, possession and payment of taxes. Constitution, Section 3, Article 13; Code, 37-3-13. Under one of the provisions thereof, title may be acquired by possession and payment of taxes for five years. It therefore appears that the assertion and allowance of a lien such as that contended for herein might, under some conditions, affect not only the right to money, but serve to destroy title acquired by a third party under the provisions of our Constitution and statutes. No such question arises in this case, but the establishment of the principle for which the government contends might, in some cases, permit a divesting of a title which a third party had so acquired, many years after the acquisition thereof. It would be strange indeed if a person who had thus acquired title to real estate could be divested thereof through the assertion of a lien existing before the title passed to the state, and which could have been but was not asserted.

The right of the state to the control of its domain has never been questioned, and the federal government has never asserted a right, directly or indirectly, involving the acquisition of title to the domain of the state, except where the consent of the state has been first obtained. This is illustrated by Section 3, Article 1, Chapter 1 of

the Code, by which the consent of the state is given to the acquisition by the federal government of real estate for particular purposes within the range of federal activities. The assertion of a lien is, of course, distinct from the acquisition of title, but the two might be easily combined in cases where, in the assertion of a lien, and for its protection, the acquisition of title might be deemed necessary.

Furthermore, the right of the state to collect property taxes on its domain for its own support, and that of its governmental subdivisions, seems inherently necessary for its preservation. If the federal government may assert its power over the state's domain, to the extent of enforcing a lien for taxes to the exclusion of the state's power of taxation thereon, then the integrity of the state government is seriously affected, for, as has been held, "the power to tax is the power to destroy." The territory embraced within the boundaries of this state was formerly the property of the Crown, and afterwards the Commonwealth of Virginia. Practically all such territory was granted by the Commonwealth of Virginia prior to the formation of this state. That territory was granted to individual owners upon the implied condition attached, subsequently embodied in the Constitution and statutes of this state, that failure to pay taxes, either by nonentry on the tax books, or failure to pay taxes after the assessment thereof, forfeited title to the state. It is under this development of our tax laws, with respect to real estate and its taxation, that the state acquired title to the real estate of the defendant company, and we do not think that the title so vested in the state under these laws can be divested by the assertion of the lien of the government set up herein. It follows that if the defendant company had no title to its real estate at the time of the appointment of the special receiver, and if the government lost its lien by failure to assert the same prior to the vesting of title to such real estate in the state, then neither the said real estate, nor the proceeds thereof, are subject to the claim of the government herein.

It is difficult to believe that the Congress, in enacting

Section 3186, which by its terms protects the rights of purchasers and lienors prior to the filing of liens by the collector, thereby evincing its intent to make such liens subject to equitable rules, had any thought of asserting the same to the prejudice of the states and their local subdivisions, in the collection of taxes vitally necessary to their continued maintenance. Support of this theory is found in *City of Winston-Salem* v. *Powell Paving Company*, 7 Fed. Supp. 424, 425, wherein it was held:

> "Persons holding liens of any character against real estate hold them subject to lien of city and county for ad valorem taxes levied annually for purposes of obtaining revenue to operate city and county governments."

This was a case in which a lien was asserted under Section 3186 of the Revised Statutes. The court, in discussing the claim, said:

> "While it is a lien, it is not necessarily to be preferred over any other lien. The government had not fastened a lien on any specific property; nor does it appear that there is no other property out of which the tax can be paid. If the government had sold the property for taxes in 1930, the date of its lien, the state tax which attached first, the county and municipal tax 1929, and street assessments, and the judgment would have been paid before the federal tax, or the property would have been sold subject to them. The land would have been taxed for general taxes in favor of the city and county, for 1930 and 1931 and 1932. Are these local groups to be deprived of the tax thus subsequently accruing if the government did not sell the property in 1930? It does not appear reasonable that Congress intended such a result. Since the lien is general and not specific, and expressly exempts the lien 'as against any mortgagee, purchaser, judgment creditor until notice has been filed by the collector,' it would appear that the lien, from the time of notice, operates as a mortgage or judgment lien, subject to enforcement by the government if it elects to enforce it. Congress

> could have provided here, as it did in section 3466, that the lien is to be paid first, but it does not do so."

The claim of priority under Section 3466 of the Revised Statutes cannot be asserted herein. We do not consider it necessary to decide whether or not the insolvency which, in this case, is asserted as the basis for the claim of priority, did or did not exist, or may be implied from the appointment of the special receiver in 1927. If the title to the real estate from which the fund now in dispute has been realized was, at the time of such alleged insolvency of the defendant company, vested in the state, said real estate was never legally within the control of the special receiver of the court which appointed him, and there was, nothing against which the priority contended for under Section 3466 could be asserted. The title acquired by the state was absolute. *McClure* v. *Maitland*, 24 W. Va. 561. Neither the former owner nor any lienor had any right as against the state. Such privilege as the former owner may have with respect to redemption in a proceeding taken by the state to sell lands so acquired by it is a gratuity on the part of the state and creates no right in the former owner, his representatives or his creditors beyond that expressly given by the statute.

The discussion has been confined to the land property tax in question, but it remains to consider the status of the items of taxes claimed by the state, growing out of corporation license tax and gross sales tax for the year 1926. If there were funds available, legally in the hands of the court against which the government's claim could be asserted, we would be disposed to the view that its claim is prior to that of the state for the special taxes mentioned. We make a distinction between license and a so-called indirect tax an a tax upon the state's domain. However, in view of the fact that there is no fund in the hands of the court which can be legally applied to the claim of the government, it is not prejudiced by the decree in favor of the state for the special taxes aforesaid. If we should give priority to the government over these

two claims, it would avail nothing because of the state's title to the land in question.

The decree of the Circuit Court is affirmed.

*Affirmed.*