**UNITED STATES v. CITY OF GREEN-VILLE et al. (two cases).**

**UNITED STATES v. WOODSIDE et al.**

Nos. 4748, 4749.

Circuit Court of Appeals, Fourth Circuit.

April 7, 1941.

Courtnay C. Hamilton, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Oscar Henry Doyle, U. S. Atty., of Anderson, S. C., on the brief), for appellant.

Wilton H. Earle, of Greenville, ·S. C. (A. C. Mann, of Greenville, S. C., on the brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in two suits instituted under R.S. 3207, 26 U.S.C.A. Int.Rev.Code, § 3678, to foreclose liens of the United States for income taxes due by Robert I. Woodside and John T. Woodside on real estate owned by them. The court below held that tax claims of the State of South Carolina and the County of Greenville and tax and special assessment claims of the City of Greenville were liens prior to the liens of the United States and accordingly directed the distribution of funds received in the foreclosure suit to the payment of these claims to the exclusion of the claims of the United States. From this judgment the United States has appealed.

The facts are that income taxes due the United States were assessed against Robert I. Woodside for the years 1920, 1921, 1924 and 1925 in the aggregate amount of $15,364.03 and against John T. Woodside for the years 1920, 1921, 1925 and 1926 in the amount of $52,182.63. The assessment list, as to each taxpayer, was received by the Collector of Internal Revenue for the district and was filed in his office May 20, 1930, and demand upon taxpayer for payment was duly made. Subsequently these suits were filed for the foreclosure of the liens so obtained and the lands subject to the liens were sold by the marshal under order of court. The tax claims of the state, city and county represent taxes assessed against this property subsequent to the year 1930, and the same is true as to the special assessment claims of the City of Greenville, with the exception of an item of $835.75 assessed in 1929, as to which the United States concedes priority of lien to the city. The proceeds of the lands sold are not sufficient to satisfy the claims for taxes; and the question is squarely presented whether the liens of the United States have priority over the liens of the state, county and city for taxes and special assessments subsequently assessed or whether these are to be given priority over the antecedent liens acquired by the United States.

The decision of the learned judge below accorded priority to the liens of the state, county and city on the ground that they were specific liens against the property, whereas the liens of the United States were general liens; but we see no basis for this distinction. It is true, of course, that the state, county and city taxes were assessed against the specific property and became liens upon it. S.C.Code of 1932, §§ 2569, 2571 and 7470. And the same is true of the paving assessments made by the city. Code § 7376. Beatty v. Wittekamp et al., 171 S.C. 326, 172 S.E. 122. But these liens were acquired subsequent to the acquisition of the liens of the United States for income taxes, which became liens upon the property, no less valid than if they had been assessed against the property itself, as soon as the assessments were filed in the office of the Collector of Internal Revenue. R.S. § 3186, as amended by the Act of May 29, 1928, c. 852, § 613, 45 Stat. 875, 26 U.S.C.A. Int.Rev. Code, §§ 3670, 3671, 3672, provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time.

"(b) Such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) in accordance with the law of the State or Territory in which the property

subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or

"(2) in the office of the clerk of the United States District Court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice; or

"(3) in the office of the clerk of the Supreme Court of the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

■■ To say that the lien provided by this statute is a general lien on all the property of the taxpayer does not help in the solution of the problem presented; for a lien is not deprived of validity because it attaches to a number of pieces of property instead of to a single piece, nor is it for that reason to be subordinated to a junior lien attaching to a single piece of property. When properly perfected, the lien under the statute constitutes a charge upon specific property of the taxpayer for the satisfaction of which that property may be sold under proceedings instituted for the purpose. As said in Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311, 313, "The Federal statutes create specific liens for taxes and as a corollary give a specific remedy for their removal and when such liens once attach, they may be lifted only as provided thereunder." Such lien is clearly not a mere inchoate lien, or right to lien, as held in Gerson et al. v. Shubert Theater Corp., D.C., 7 F.Supp. 399; for not only was it deemed necessary in the statute itself to provide that the lien should not be valid against any mortgagee, purchaser or judgment creditor until the proper filing of notice, but provision also was made by the Act of June 29, 1939, 53 Stat. 882, 26 U.S.C.A. Int.Rev.Code, § 3672(b), that, notwithstanding the filing of such notice, such lien should not be a valid lien upon certain described securities as against mortgagees, pledgees or purchasers, if they were holders for an adequate and full consideration and "without notice or knowledge of the existence of such lien." No such provisions would be necessary if the lien were intended to be a mere inchoate right to a lien which would attach to specific property only after proceedings had been instituted for its enforcement.

■■ After the lien provided by the statute attaches, the property has in a sense

two owners, the taxpayer and, to the extent of the lien, the United States. Com'r v. Coward, 3 Cir., 110 F.2d 725, 727. The lien cannot be affected by state legislation respecting the recording or registering of mortgages or liens. United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705; In re Dartmont Coal Co., 4 Cir., 46 F.2d 455. Nor can it be affected by homestead, spendthrift trust or stock transfer acts of the states. Staley v. Vaughn, Tex.Civ. App., 50 S.W.2d 907; In re Rosenberg's Will, 269 N.Y. 247, 199 N.E. 206, 105 A.L.R. 1238; United States v. Rosenfield, D.C., 26 F.Supp. 433; Cannon v. Nicholas, 10 Cir., 80 F.2d 934. And we think it equally clear that, without the consent of Congress, it cannot be affected by the exercise of state taxing power. McCulloch v. Maryland, 4 Wheat. 316, 436, 4 L.Ed. 579; United States v. Wright, 4 Cir., 53 F.2d 300, 301.

■■ Whether viewed as an interest of the federal government in the property to which it has attached or as an instrumentality of the federal government for the collection of taxes due that government, it is beyond impairment by the exercise of state power. In the first view, it must be remembered that property of the federal government may not be taxed by the states without the consent of Congress, and, in the second, that Congress has power to lay and collect taxes of the sort here involved and to make all laws necessary and proper for that purpose, and that such laws, when made, are the supreme law of the land. Constitution Art. 1 § 8, Art. VI; 26 R.C.L. 107, 108; McCulloch v. Maryland, supra; Florida v. Mellon, 273 U.S. 12, 17, 47 S.Ct. 265, 266, 71 L.Ed. 511. In the case last cited, which involved the contention that the federal estate tax interfered with the state's power of taxation, the court said:

"The act assailed was passed by Congress in pursuance of its power to lay and collect taxes, and, following the decision of this court in respect of the preceding act of 1916 (New York Trust Co. v. Eisner, 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660), must be held to be constitutional. If the act interferes with the exercise by the state of its full powers of taxation or has the effect of removing property from its reach which otherwise would be within it, that is a contingency which affords no ground for judicial relief. The act is a law of the United States, made in pursuance of the Constitution, and therefore, the supreme law of the land, the Constitution or laws of the states to the contrary notwithstand-

ing. Whenever the constitutional powers of the federal government and those of the state come into conflict, the latter must yield."

In McCulloch v. Maryland, supra [4 Wheat. 436, 4 L.Ed. 579], the court, speaking through Chief Justice Marshall, said: "The Court has bestowed on this subject its most deliberate consideration. The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared."

■ Whether the lien provided by the statute is entitled to priority over antecedent liens for taxes duly perfected by states or municipalities, is a question which is not before us and which we need not decide. It would seem, however, that the lien was intended to attach to the property of the taxpayer subject to existing encumbrances; and this is borne out by the provision that it shall not be valid as against mortgagees, purchasers or judgment creditors until notice thereof is duly filed as provided by the act. This interpretation places liens of the federal government and liens of the states on an equal basis for the application of the principle first in time, first in right (Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592), which is the principle ordinarily applied with respect to priority of liens, and the one applied between a tax lien and other liens where the tax lien is not made paramount by statute. 61 C.J. p. 934. The contention that priority of right should not be accorded a lien of the federal government prior in time because the statute contains no provision that the federal tax shall be first paid,[1] ignores the principle that a state may not burden the taxing power of the federal government without its consent, and that, in the absence of such consent, no tax upon the property of the federal government or any of its instrumentalities can be sustained. The thing of significance to be noted is, not that the statute does not give priority to the federal tax, but that it does not grant permission to the states to interfere with a lien of the federal government by subsequent exercise of their taxing powers.

■ We have noted the cases of City of Winston-Salem v. Powell Paving Co., D.C., 7 F.Supp. 424 and Berrymont Land Co. v. Davis Creek Coal Co., 119 W.Va. 186, 192 S.E. 577; but, with great respect to the courts by which these decisions were rendered, we are unable to follow them. They fail to take account of the fact that when the lien created by the federal statute has once attached to the property of the taxpayer it is as specific a lien on that property as is the lien for a tax asserted against the property itself; and they ignore the principle that, without the consent of the federal government, no action of the states may affect its property or any instrumentality which it has created for exercise of its lawful functions. As pointed out above, the lien for taxes is a property right of the federal government. At the least, it is an instrumentality created by that government for the collection of its revenues. We know of no principle upon which it may be subordinated or its value impaired by state action, whether through exercise of the taxing power or otherwise. The error of these cases seems to have arisen from considering the statutory lien of the federal government as analogous to that of the holder of a lien under mortgage, which is of course subject to the power of the state to tax the mortgaged property. The difference is that the rights of the mortgagee as well as of the mortgagor in the mortgaged property are held subject to the power of the state to tax it, whereas the rights of the federal government are not held subject to that power.

■ The delay in proceeding with the foreclosure of the liens presents no difficulty. It is not contended that the bar of the statute of limitations has fallen; and it is well settled that the rights of the government are not affected by laches of its officers and that it is not estopped by their conduct from asserting its rights. United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199; Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 125, 39 S.Ct. 407, 63 L.Ed. 889.

■ We agree with the court below that, as no distribution in an insolvency pro-

---

[1] See In re Mt. Jessup Coal Co., D.C., 7 F.Supp. 603 and In re Wyley Co., D.C., 292 F. 900. It is to be noted with respect to the Wyley case, however, that the question specifically dealt with was not priority of liens but of distribution under the Bankruptcy Act.

ceeding is involved, the provision of § 3466 of the Revised Statutes, 31 U.S.C.A. § 191, providing for priority of payment of debts due the United States, has no application.

For the reasons stated, the judgments appealed from will be reversed, except in so far as the judgment in No. 4748 accords priority to the item of $835.75 for paving assessments ratified in 1929, and the causes will be remanded for further proceedings not inconsistent herewith.

Reversed.