Lu May, by guardian *ad litem,* Respondent, vs. Van Drisse Motors, Inc., Appellant.

*June 3—June 24, 1929.*

For the appellant there was a brief by *Kittell, Jaseph, Young & Everson* of Green Bay and *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie*.

For the respondent there was a brief by *John E. Martin* and *Clifford & Dilweg*, all of Green Bay, and oral argument by *G. F. Clifford*.

CROWNHART, J.  The appellant owned and managed a garage in which there was a room for washing and repairing autos.  There was located under the level of the floor a catch-basin covered by a circular perforated iron lid, one-half inch in thickness by about eighteen inches across.  Into this basin not only water but oil, gasoline, alcohol, and dirt were allowed to accumulate in large quantities.  The respondent seeks to sustain the judgment under the safe-place statute, sec. 101.06.

The manager of appellant testified that he knew the mixture in the basin was dangerous because liable to explosion.  He testified as follows:

"*Q*.  You know when there is oil, gas, and alcohol, there is danger of an explosion, don't you?  *A*.  Yes, sir.

"*Q*.  That's one of the reasons why when the manhole was plugged up you cleaned it out?  *A*.  Not necessarily.

"*Q*.  It's one of the reasons?  *A*.  Yes, sir.

"*Q*.  Wherever there is gas and oil and dirt mixed up there is danger of an explosion?  *A*.  Yes, sir.

"*Q*.  When it's in a catch-basin you know there is particular danger, don't you?  *A*.  Yes, sir.

"*Q*.  When it plugs up there is danger?  *A*.  Not any more than otherwise.

"*Q*.  Wherever there is that condition with gas and oil, otherwise or not, you know there is danger?  *A*.  Yes, sir."

The respondent was a fourteen-year-old boy, whose father worked in the garage and who was accustomed to go to the garage each evening to ride home with his father.  The testimony clearly shows that the garage was a place of employment.  Nor can there be any doubt that the boy was a "frequenter" therein at the time he was injured.  He walked into the garage to meet his father, according to custom, per

request of his father, and when passing over the manhole of the catch-basin the explosion occurred, resulting in his injuries.

The safe-place statute, designed to require safe places of employment, reads:

"Section 101.06. Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe."

"Safe" or "safety," as used in the Statutes, is defined as follows:

"101.01 (11). The term 'safe' or 'safety' as applied to an employment or a place of employment or a public building, shall mean such freedom from danger to the life, health, safety or welfare of employees or frequenters, or the public, or tenants, or firemen, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the nature of the employment, place cf employment, or public building, will reasonably permit."

There was no proof as to the cause of the explosion. The evidence shows that the methods employed by the appellant were the same as usually employed by other garages. There was no proof that any explosions had occurred in other garages employing such methods. There was no proof that the mixture in the catch-basin was liable to spontaneous com-

bustion. No question was submitted to the jury as to whether the place of employment was as free from danger to life, health, safety, and welfare of employees or frequenters as the nature of the place of employment would reasonably permit. The complaint does not seem to have been drawn on that theory, nor was the evidence produced on that theory. The special verdict is based on the theory of ordinary care rather than upon the safe-place statute. The first question is:

"Did the defendant fail to exercise ordinary care in maintaining his premises so as to be as reasonably safe for the public entering them as the use thereof would reasonably permit?"

Other questions were likewise based on the theory of ordinary care. That does not meet the test under the safe-place statute. Under that statute it is the positive duty to furnish a safe place of employment. It is not a question of ordinary care. The question should have been: "Did the defendant furnish a safe place of employment?" accompanied with appropriate instructions as to what constitutes a safe place of employment.

The evidence is insufficient to show that the place of employment was unsafe, in violation of the safe-place statute. On the other hand, the evidence is quite conclusive that the appellant did exercise such ordinary care in maintaining its garage as the great mass of garage owners, similarly situated, exercised under like circumstances.

We think that, in view of the record and in justice to both parties, the judgment should be reversed, with leave to the respondent to apply to the trial court to amend the complaint to allege a cause of action under the safe-place statute, and for a new trial.

*By the Court.*—Judgment reversed, with costs to the appellant.