**UNITED STATES of America,
Plaintiff,
v.
RINGWOOD IRON MINES, Inc., and the
Borough of Ringwood, Defendants.**

Civ. A. No. 35–56.

United States District Court
D. New Jersey.

May 8, 1957.

---

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., Eugene M. Friedman, Asst. U. S. Atty., Dover, N. J., for plaintiff.

Wallisch & Wallisch, Passaic, N. J., Louis Wallisch, Jr., Passaic, N. J., for defendant, Borough of Ringwood.

MODARELLI, District Judge.

The United States has moved for an order which would grant priority to a mortgage lien it held on properties located in the Borough of Ringwood, New Jersey. The effect of such an order would be to subordinate to the aforementioned mortgage certain municipal tax liens of the Borough. A review of the pertinent facts which are not in dispute is necessary before the question of law is reached.

The United States, acting by and through the General Services Administration, conveyed to the defendant, Ringwood Iron Mines, Inc., certain mining properties situate in Ringwood. The properties had been deemed surplus by the Administration in accordance with appropriate statutes and regulations. A relatively nominal sum was paid in cash, the balance of the purchase price, a promissory note for $1,400,000 being collaterally secured by a purchase money mortgage on the subject premises dated August 14, 1951, with the General Services Administration as mortgagee. The mortgage was duly recorded in the Office of the Clerk of the County of Passaic. The operation of the mines by the Ringwood Iron Mines, Inc., was not marked by success, to phrase it conservatively, and as a result liabilities were incurred, including taxes to the Borough. Real estate taxes fell in arrears for part of 1953, and all of 1954 and 1955. The Collector of Taxes of the Borough, pursuant to N.J.S.A. 54:5–19 et seq., duly advertised the property of the Ringwood Iron Mines, Inc., for sale. On December 30, 1955, at public auction, the Collector of Taxes sold the property in question to the Borough of Ringwood subject to the equity of redemption. A certificate of sale for the unpaid taxes was issued to the Borough.

The decline in the commercial fortunes of the mining enterprise also resulted in a default of payments under the mortgage. Successive adjustments were made as a concession to the financial plight of the mortgagor, but despite several liberal deferrals, the mortgagee was obliged to foreclose. The indebtedness amounted to $1,365,000, plus interest. In the foreclosure action filed January 23, 1956, the Borough of Ringwood was joined as party defendant. Judgment of foreclosure was entered July 2, 1956. The Government and the Borough at that time joined in a stipulation incorporated in the judgment which read, in part, as follows:

> "* * * it is understood between the United States of America on the one hand and the Borough of Ringwood on the other, that should it be determined by the Court pursuant to the trial of the question that under applicable law the tax claim of the Borough of Ringwood is not cut off by the foreclosure sale to be held pursuant to this proceeding and that said taxes are due and owing and are superior to the claim of the United States of America, such taxes shall remain a lien against the property and shall be payable by the owner thereof."

The pending motion is an attempt to settle the question noted in the judgment. In implementation of the judgment, the mortgaged premises were sold by the United States Marshal at the Office of the Sheriff of Passaic County, December 4, 1956. The highest bid, $1,685,367.43, offered by the Administrator of General Services, was accepted and an order confirming the sale issued.

The issue may be summarized as follows: Are liens for municipal taxes cut off by a judicial sale resulting from the foreclosure of a mortgage held by the General Services Administrator? Briefs have been filed, citing authorities in support of the contentions of both parties.

■ In its brief, the Government advanced the argument that its precedence arises from the force of the priority statute embodied in 31 U.S.C.A. § 191, formerly R.S. § 3466. In order for this statute to control the disposition of the matter at bar, it would be necessary to find the debtor insolvent.[1] United States v. State of Oklahoma, 1923, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638. This court has never made such a finding of insolvency.[2] At the hearing of this motion the Government abandoned this statute as a basis of its contentions. Inasmuch as the statutory provision is inapplicable, the court has no occasion to consider the questions arising thereunder.

■ The second contention of the Government is that the claim of the United States takes precedence by virtue of the fact that it is prior in time. In other words, the plaintiff invokes the maxim, "The first in time is the first in right." This principle is widely accepted and applied in the absence of legislation to the contrary. 33 Am.Jur., Liens, § 33; 53 C.J.S. Liens § 10 b. In opposition to this contention, the Borough relies upon the effect of the New Jersey priority statute. The New Jersey statute expressly provides that unpaid real estate taxes shall constitute a first lien on the land assessed [3] and be paramount to all prior or subsequent encumbrances.[4] It is well settled in New Jersey that the legislature may make taxes a lien paramount to prior claims, either by incorpo-

rating such a directive in municipal charters or by laws of general application.[5] The power to create such priority, at least as to a private mortgagee, has been recognized by the Supreme Court of the United States in Provident Institution for Savings in Jersey City v. Mayor & Aldermen of Jersey City, 1885, 113 U.S. 506, 5 S.Ct. 612, 28 L.Ed. 1102.

■ As pointed out by the Supreme Court in United States v. State Bank of North Carolina, 1832, 6 Pet. 29, 31 U.S. 29, 35, 8 L.Ed. 308, a claim of the United States for priority of payment "does not stand upon any sovereign preogative, but is exclusively founded upon the actual provisions of their own statutes." This principle has been reiterated in many subsequent decisions. See Equitable Trust Co. of New York v. Connecticut Brass & Mfg. Corp., 2 Cir., 1923, 290 F. 712, 718; Wagner v. McDonald, 8 Cir., 1938, 96 F.2d 273; Liberty Mutual Ins. Co. v. Johnson Shipyards Corp., 2 Cir., 1925, 6 F.2d 752, affirmed Stripe v. United States, 1926, 269 U.S. 503, 46 S.Ct. 182, 70 L.Ed. 379. But by the decision of United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, it is now settled that the common law rule of "the first in time is the first in right" applies to determine priority between statutory tax claims of the city and federal governments in cases involving real estate where it is not shown that the taxpayer is insolvent. This decision is part of a

1. See extensive annotation on the subject, "Construction, Application, and Effect of Statutes Giving Preference to Debts Due the United States out of Assets of Insolvent," in 97 L.Ed. 33 (1952).

2. The appointment of Mr. Arthur C. Bruni by the court on February 7, 1956, was in the capacity of a custodian to prevent waste as well as to oversee the proper maintenance, preservation and safety of the mining property and equipment.

3. N.J.S.A. § 54:5-6. "Taxes on lands shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed, and all interest, penalties, and costs of collection which

thereafter fall due or accrue shall be added to and become a part of such lien."

4. N.J.S.A. § 54:5-9. "Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienations and descents of such lands or encumbrances thereon, except subsequent municipal liens."

5. Morrow v. Dows, 1877, 28 N.J.Eq. 459; Vreeland v. Mayor & Alderman of Jersey City, 1883, 37 N.J.Eq. 574; Third Ave. Building & Loan Ass'n v. Prothero, 1938, 124 N.J.Eq. 193, 1 A.2d 20; Mayor & Aldermen of Jersey City v. Township of Montville, 1913, 84 N.J.L. 43, 85 A. 838, affirmed 1913, 85 N.J.L. 372, 91 A. 1069, all interpreting the predecessor of the present statute.

series of cases which gives the United States precedence, but it is interesting to note that all of the cases which go to establish this priority arose under federal tax statutes, 26 U.S.C. §§ 3670, 3671, 3672.[6] See Scheps, "United States v. New Britain—A Critical Study," 19 NIMLCO Mun.L.Rev. 376 (1956). Quaere: Would the same priority prevail in a contest between a municipal tax lien and a mortgage held by a federal agency with no question of insolvency involved? This is the problem presented in the case at bar.

The treatises on the subject of mortgages confine themselves to general propositions which leave the question unanswered. The authorities dismiss the subject with the unqualified statement that "The lien for taxes is always a first lien, prior to any other." Walsh on Mortgages, (1934), p. 117. See also Osborne, The Law of Mortgages, (1951), § 221, pp. 596–600; Campbell, Cases on Mortgages of Real Property, (1926), p. 413; Glenn on Mortgages, (1943), Vol. III, §§ 434, 435, pp. 1695, 1697–1698. Surprisingly, there is also a paucity of decisional law touching upon the character of the liens and the sequence in which they did attach in the case at bar. One of the cases from which the municipality could draw support, United States v. Woodside, D.C.1940, 34 F.Supp. 281, was reversed on appeal, United States v. City of Greenville, 4 Cir., 1941, 118 F. 2d 963. It was noted in the latter decision that liens of the federal government and liens of the states are on an equal basis for application of the principle "first in time, first in right." The decision which the Borough relies upon, Byram Holding Co. v. Bogren, Ch.Div.1949, 2 N.J.Super. 331, 63 A.2d 822, appears to stand alone, and contains language which seems at variance with the expression of views on the subject by the United States Supreme Court. In the Bogren case, the Federal Housing Commissioner argued that a mortgage assigned to him in 1936 conferred priority over a lien for unpaid municipal taxes for the year 1940. The court held in favor of the municipality. In appraising this decision, it should be noted that the federal government had waived the exemption of the property owned by the Federal Housing Commissioner from municipal taxation. Accordingly, the court reasoned:

"It necessarily follows that if an interest of the Federal Housing Commissioner is subject to the lien of a tax, he is accordingly subject to any proceedings to enforce payment of the tax." 63 A.2d at page 824.

This reasoning is to be contrasted with the views of the Supreme Court in City of New Brunswick v. United States, 1928, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693. There the question was whether or not the municipality could levy its real property taxes upon the interests held both by the United States Housing Corporation as mortgagee and by the private purchasers as equitable owners. The Court responded with these words:

"We see no reason, however, if the New Jersey law permits, why the City may not assess taxes against the purchasers upon the entire value of the lots and enforce collection thereof by sale of their interests in the property. With that the Corporation and the United States have no concern. But it is plain, under the doctrine of the Clallam case [Clallam v. United States,

6. See United States v. Colotta, 1955, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725; United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271; United States v. Liverpool & London Globe Ins. Co., Ltd., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. The most recent decision of the Supreme Court which brought the New Britain holding under review is United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, reversing 7 Cir., 1955, 227 F.2d 359 (federal tax lien has priority over a statutory mechanics lien even though the latter had been perfected and was prior in time.).

263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328], that the City is without authority to enforce the collection of the taxes thus assessed against the purchasers by a sale of the interest in the lots which was retained and held by the Corporation as security for the payment of the unpaid purchase money, whether as an incident to the retention of the legal title or as a reserved lien or as a contract right to mortgages. That interest, being held by the Corporation for the benefit of the United States, is paramount to the taxing power of the State and cannot be subjected by the City to sale for taxes." 276 U.S. at pages 555–556, 48 S.Ct. at pages 372–373.

I have thoroughly researched the legislative history of the General Services Administration and have found no expression of congressional intent to waive immunity from state or local taxation. The agency was established by the Federal Property and Administrative Services Act of 1949.[7] Section 204(f) authorizes the Administrator to preserve and manage any mortgage, lien, or other interest retained as security, and authorizes him to enforce and settle the rights of the Government with respect thereto.[8] The statute was amended in 1950 which authorized the Administrator to make payments in lieu of taxes.[9] This authority would not extend to property declared surplus after July 1, 1949,

nor to property, the title of which passed to the United States.[10]

Upon inquiry the court has learned that all of the property rights in question had been acquired by the Defense Plant Corporation in 1942–1943. The Defense Plant Corporation went out of existence on June 30, 1945, at which time its assets were transferred to the Reconstruction Finance Corporation. The Reconstruction Finance Corporation conveyed the property to the United States on February 13, 1950.[11]

Referring to the numerous lending agencies of the federal government, one authority observed:

"There are many of these Federal agencies today, and they have a common characteristic, in that they exercise governmental functions. Each bureau, therefore, is the national government in a new guise, and hence it can claim various immunities that pertain to sovereign operations." Glenn on Mortgages, (1943), Vol. I, § 80.1, p. 489.[12]

The United States Supreme Court has held in numerous cases that the Resettlement Administration, Home Owners Loan Corporation, the Federal Farm Board, and other such agencies are constituted Federal Agencies. They exercise governmental functions and have full power to do what is necessary to carry out such functions. See Pittman v. Home Owners' Loan Corporation,

---

7. 63 Stat. 377 as amended; 5 U.S.C.A. § 630; 40 U.S.C.A. § 471; 41 U.S.C.A. § 251; 44 U.S.C.A. § 391. The statute states that the Administration is "an agency in the executive branch of the Government." 5 U.S.C.A. § 630(a). The Administrator is obliged to report annually to Congress. 40 U.S.C.A. § 492.

8. U.S.Code Cong.Ser., 1949, p. 1491; 40 U.S.C.A. § 485(f).

9. Section 210(a) (9) of the amendment authorizes the payment of "sums in lieu of taxes on real property declared surplus by Government corporations pursuant to the Surplus Property Act of 1944, where legal title to such property re-

mains in any such Government corporation * * * ." 40 U.S.C.A. § 490.

10. See the Senate Report which analyzes the amendment section by section. U.S. Code Cong.Ser., 1950, Vol. 2, pp. 3547, 3556–3557.

11. The premises were declared surplus on June 2, 1945. At that time the property came under the authority of the War Assets Administration, the predecessor of the General Services Administration.

12. In recognizing the impediment which sovereign immunity would place in the path of foreclosure actions, Congress magnanimously waived that immunity in such actions. Act of March 4, 1931, now 28 U.S.C.A. § 2410.

1939, 308 U.S. 21, 32, 60 S.Ct. 15, 84 L. Ed. 11; Graves v. People of State of New York ex rel. O'Keefe, 1939, 306 U.S. 466, 477, 59 S.Ct. 595, 83 L.Ed. 927; Smith v. Kansas City Title & Trust Co., 1921, 255 U.S. 180, 209, 212, 41 S.Ct. 243, 65 L.Ed. 577. See also North Dakota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 1933, 66 F.2d 573, 92 A.L.R. 1484, certiorari denied 1934, 291 U.S. 672, 54 S.Ct. 457, 78 L.Ed. 1061. These cases have held, in addition, that in granting loans and extending credit the Government is exercising a governmental function and is, therefore, not going into business in competition with private business. This conclusion rests upon the rationale that the Federal Government has established these sovereign agencies in an effort to aid the needy and those unable to obtain aid elsewhere. See United States v. Sherman, D.C.N.D. N.Y.1941, 41 F.Supp. 463, 465. In the latter case, predicated upon the reasoning outlined, a chattel mortgage held by the Resettlement Administration was held superior to a judgment creditor who sought execution of his lien.

■ While the case law establishes the proposition that a claim of the United States for priority payment is exclusively founded upon the actual provisions of their own statutes, the controlling fact is that the federal law "does not grant permission to the states to interfere with a lien of the federal government by subsequent exercise of their taxing powers." United States v. City of Greenville, supra, 118 F.2d at page 966. City of New Brunswick v. United States, supra, 276 U.S. at pages 555–556, 48 S.Ct. at page 372. A state cannot on behalf of its municipalities impair the standing of federal liens without the consent of Congress. United States v. City of New Britain, supra, 347 U.S. at page 84, 74 S.Ct. at page 369; State of Michigan v. United States, 1943, 317 U.S. 338, 340, 63 S.Ct. 302, 87 L.Ed. 312; United States v. State of Oklahoma, supra, 261 U.S. at page 260, 43 S.Ct. at page 297; United States v. Snyder, 1893, 149 U.S. 210, 214, 13 S.Ct. 846, 37 L.Ed.

705. This is so regardless of the fact that the lien arises from a federal tax or a mortgage held by the United States. There is nothing in the Federal Property and Administrative Services Act of 1949 to show that Congress intended antecedent federal liens to rank behind other encumbrances, and the legislative history lends support to this impression.

■ In granting priority to the mortgage, I am not unmindful of the several equities in favor of the municipality. In fact, it is only the weight of the superior decisional authority that has led me to the conclusion reached herein. The court is very much aware of the fact that since 1931 the national government embarked on a policy of making loans on various sorts of security. In no area was it more active than in the mortgage market. I am unable to see how such transactions differ from those between private parties. The explanation of sovereignty appears too unsatisfactory when we see the United States step down from that place of sovereignty to enter the domain of business and commerce. See the observations expressed in United States v. Guaranty Trust Co. of New York, 8 Cir., 1929, 33 F.2d 533, 539, affirmed, 1930, 280 U.S. 478, 50 S.Ct. 212, 74 L.Ed. 556; United States v. Miller, 8 Cir., 1928, 28 F.2d 846, 850, 61 A.L.R. 405. When a local government provides police and fire protection, health and education facilities, and water supply, all of which enhance the value of property within its jurisdiction, "it is only an ordinary and legal exertion of government to provide means for its compulsory compensation." Dunbar v. City of New York, 1920, 251 U.S. 516, 518, 40 S.Ct. 250, 251, 64 L.Ed. 384. But the Supreme Court has limited its sanction of means for compulsory compensation to interests in private hands. Consequently, in the absence of contrary directions in federal statutes, a lien in favor of the United States takes precedence over a later lien for municipal taxes. See McQuillan, The Law of Municipal Corporations, (3d ed. 1950), § 44.143.

The motion of the plaintiff is granted.

The foregoing opinion shall constitute findings of fact and conclusions of law as required by Rule 52, Fed.Rules Civ. Proc., 28 U.S.C.A.

An order may be submitted in conformity with the opinion herein expressed.