FIRST NATIONAL BANK OF CHIPPEWA FALLS, Plaintiff and Respondent, v. CHARLES HENNEMAN COMPANY, Defendant: JOHNSON and wife, Defendants and Respondents: UNITED STATES OF AMERICA, Defendant and Respondent: CHIPPEWA COUNTY, Defendant and Appellant.

*April 4—May 3, 1960.*

For the appellant there were briefs and oral argument by *Eugene R. Jackson,* district attorney, and *John Frampton* of Chippewa Falls, special counsel.

For the respondent First National Bank of Chippewa Falls there were briefs and oral argument by *Ingolf E. Rasmus* and *James B. Halferty,* both of Chippewa Falls.

For the respondents Johnson there were briefs and oral argument by *Marshall A. Wiley* of Chippewa Falls.

For the respondent United States of America there was a brief by *Charles K. Rice,* assistant attorney general, and *Lee A. Jackson, A. F. Prescott,* and *Joseph Kovner* of the department of justice, all of Washington, D. C., attorneys, and *George E. Rapp,* United States attorney, and *Robert J. Kay,* assistant United States attorney, both of Madison, of counsel, and oral argument by *Mr. Kay.*

A brief was filed by *John F. Kitzke,* assistant city attorney of the city of Milwaukee, and *Robert D. Sundby,* legal counsel for the League of Wisconsin Municipalities, as *amici curiae.*

DIETERICH, J. The Charles Henneman Company executed and delivered to the First National Bank of Chippewa Falls on January 6, 1948, its promissory note in the amount of $35,000 secured by a first mortgage on lots 4, 5, and 6,

block 9, Allen's Addition to the city of Chippewa Falls. The mortgage was recorded in the office of the register of deeds for Chippewa county on January 9, 1948.

On February 9, 1948, the Charles Henneman Company executed and delivered its promissory note in the amount of $20,000 to Andy Johnson and Violet Johnson. The note was secured by a mortgage on lots 4, 5, and 6, block 9, Allen's Addition, lot 8, block 5, Allen's Addition, and the east one half of lot 1, block 5, Mansfield's Addition. This mortgage was recorded in the register of deeds' office in the county of Chippewa on February 10, 1948.

On October 29, 1951, another mortgage was executed for $20,000 to Andy Johnson and Violet Johnson, which recited:

"The north half of lot 1, block 5, Mansfield's Addition to the city of Chippewa Falls.

"This mortgage is given to correct the description as to the above-described mortgaged premises which were erroneously described as the east half of lot 1, block 5, in that certain mortgage between the same parties, dated February 9, 1948, and recorded in the office of the register of deeds for Chippewa county, in volume 154 of Mortgages, page 43, document No. 247938."

This corrected mortgage was recorded in the office of the register of deeds of Chippewa county on November 2, 1951.

The United States of America filed a tax lien on April 20, 1951, with the register of deeds of Chippewa county against the real estate of the Charles Henneman Company in the amount of $96,827.82, pursuant to the provisions of the Internal Revenue Code.

The pleadings disclose that Frank Hauptmann was appointed assignee under the provisions of the Wisconsin insolvency statutes on January 11, 1954. The foreclosure proceedings were commenced on May 14, 1954.

The following stipulation was filed as a part of the fore-closure proceedings:

"It is hereby stipulated in this assignment-for-benefit-of-creditors proceedings, by the undersigned, who are parties plaintiff and defendant respectively in the action of fore-closure in this court entitled the First National Bank of Chippewa Falls, a corporation, v. Charles Henneman Company *et al.,* which is now pending, that the sale by the assignee for benefit of creditors, namely, Frank Hauptmann, of all of the remaining assets, real and personal, of the Charles Henneman Company, for the total sum of $62,500 is hereby approved, and the funds to be allocated as to sell-ing price as follows:

| | |
|---|---:|
| "Lots 4, 5, and 6, block 9, Allen's Addition to the city of Chippewa Falls | $49,000 |
| Lot 8, block 5, Allen's Addition to the city of Chippewa Falls | 4,500 |
| North one half of lot 1, block 5, Mansfield's Addition to the city of Chippewa Falls | 7,000 |
| All remaining personal property | 2,000 |
| Total | $62,500 |

"It is stipulated and agreed that the sales proceeds of the real estate afore-mentioned, shall be substituted in the said foreclosure action for the real estate itself, with the parties to the said action having the same priorities, liens, and rights in such proceeds as they would have had in said real estate.

"It is further understood and agreed that this stipulation is contingent upon the release by the proper governing au-thority of Chippewa county, Wisconsin, of its tax liens which have accrued or will accrue through its purchase of the tax certificates covering the aforesaid real estate cover-ing the years 1951 and subsequent thereto, substituting the sales proceeds afore-mentioned in place of the real estate, the said county having the same priority, lien, and rights in such proceeds as it would have had in the said real estate; and that the city of Chippewa Falls, Chippewa county, Wisconsin, shall release by proper governing authority, any

tax lien it may have on the aforesaid real estate, substituting its claim against the sales proceeds of the real estate aforementioned, the said city to have the same priority, lien, and rights in such proceeds, as it would have in the real estate.

"It is understood and agreed that the aforesaid offer of purchase and acceptance thereof by the said assignee for benefit of creditors provides that the said sale shall be closed on or before April 30, 1955, and if sale is not completed by that date the offer shall be null and void. In event of failure to close said sale by April 30, 1955, then this stipulation shall have no force and effect and shall be canceled. It is understood and agreed that Frank Hauptmann, assignee for benefit of creditors, will, in accordance with the requirements of the Wisconsin law, pay the prorata share of the real-estate taxes on the afore-mentioned real estate for the current year up to the time of conveyance by deed and transfer of possession to the purchasers. It is understood that this payment is without prejudice as to any claim of priority of the United States income excess profits and declared value excess profits tax lien and is made solely for the purpose of getting a record title to the real estate which is merchantable at the earliest possible date.

"Charles Henneman Company, itself and by Frank Hauptmann, its assignee for benefit of creditors, does, in consideration of the foregoing agreement, waive any and all equity of redemption it may have in the aforesaid real estate and does expressly approve the said sale."

Pursuant to said stipulation, the court entered the following order directing sale:

"In accordance with the stipulation on file herein, executed by Charles Henneman Company, Andy Johnson and Violet Johnson, the United States of America, and Frank Hauptmann, as assignee for the benefit of creditors of Charles Henneman Company, either personally or by their respective attorneys, and in accordance with a resolution passed by the county board of supervisors, Chippewa county, Wisconsin,

"Now, therefore, on motion of the attorneys for each and all of the parties,

"It is ordered and directed that the real estate which is the subject of this foreclosure by the plaintiff and the defendants,

Andy Johnson and Violet Johnson, be sold to Albert Perrenoud, Howard H. Post, Norman J. Nelson, and Arthur R. Perrenoud, for the total price of $60,500, free and clear of any and all liens of the First National Bank of Chippewa Falls, the United States of America, Andy Johnson and Violet Johnson, and said Chippewa county, the funds of said selling price to be allocated . . . [as set forth above].

"The said sales proceeds from the real estate afore-mentioned, based on aforesaid allocation of value, shall be substituted in this foreclosure action for the real estate itself, with each of the parties to this action having the same priorities, liens, and rights in said proceeds as they, it, he, or she would have had in the aforesaid described real estate.

"Further it is ordered that the said sum of $60,500 shall be paid over to John Ritzinger, clerk of this court, to be held by him under such conditions and restrictions as the court shall direct and to abide the outcome and final determination and judgment in this action.

"In accordance with the terms of the stipulation referred to above, the said clerk of court, at such time as the 1955 real-estate taxes are determined and levied on aforesaid real estate, shall pay one third of the 1955 tax thereon as the prorata share of seller, in accordance with the sales agreement. Said expense to be a charge pro rata against the funds as allocated above."

The following receipt dated July 6, 1955, was executed by the clerk of the circuit court for Chippewa county:

"Received of Frank Hauptmann, receiver of Charles Henneman Company, the sum of $60,500, with which I agree to purchase United States savings bonds in said amount; the bonds to be held by me and my successors in office to abide the judgment of the court in this action as to disposition of said funds.

"Further agreed that the bonds shall be placed for safe-keeping with W. O. Kelly, Chippewa county treasurer and his successors in office, and the actual control over the said bonds shall be joint with said Chippewa county treasurer."

The only question on the appeal before this court is the allocation and distribution of the amount of $60,500 in

government bonds in the possession of the clerk of the circuit court from the sale of the real estate on the basis of priority of the respective mortgagees, United States government tax lien, and the Chippewa county delinquent real-estate taxes.

### Priority of Mortgages and Federal Tax Lien.

The priority of the federal tax lien is controlled exclusively by federal law. The Charles Henneman Company was insolvent and an assignee and receiver had been appointed under the Wisconsin insolvency statute prior to the foreclosure proceedings. The stipulation provided that the sales proceeds of the real estate be substituted in the foreclosure action for the real estate itself, with the parties to have the same priorities, liens, and rights in such proceeds as they would have had in the real estate.

Sec. 3670, 26 USCA, Internal Revenue Code, p. 944, provides:

> *"Property subject to lien.* If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 53 Stat. 448."

Sec. 3672, 26 USCA, Internal Revenue Code, p. 945, provides:

> *"Validity against mortgagees, pledgees, purchasers, and judgment creditors.*
> *"(a) Invalidity of lien without notice.* Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—
> *"(1) Under state or territorial laws.* In the office in which the filing of such notice is authorized by the law of the

state or territory in which the property subject to the lien is situated, whenever the state or territory has by law authorized the filing of such notice in an office within the state or territory; . . ."

In *United States v. New Britain* (1954), 347 U. S. 81, 88, 74 Sup. Ct. 367, 98 L. Ed. 520, the court said:

"The United States is not interested in whether the state receives its taxes and water rents prior to mortgagees and judgment creditors. That is a matter of state law. But as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, congress intended to assert the federal lien."

See *Michigan v. United States* (1943), 317 U. S. 338, 63 Sup. Ct. 302, 87 L. Ed. 312.

Under the present status of the federal law the federal tax lien attaches to all property belonging to the taxpayer and although the determination of property rights belonging to the taxpayer is a matter of application of state law, the priority of a government lien against such property is controlled by federal law. In the *New Britain Case, supra,* the United States supreme court established the principle of "first in time, first in right," and the federal statutes specifically provide that the government lien shall not be valid as against liens filed prior to the filing of the notice by the collector. Sec. 3672, 26 USCA, Internal Revenue Code, p. 945. Therefore, where, as here, there is a mortgage, recorded pursuant to state law prior to the recording of the federal tax claim, then the government can only resort to those proceeds from the sale of the property which are in excess of the mortgage indebtedness for satisfaction of its lien. *River Rouge Savings Bank v. Victor Building Co.* (Mich. 1960), 101 N. W. (2d) 260.

It may be stated at this point that the mortgage of the Johnsons recorded on the 29th day of October, 1951 (the original mortgage being recorded subsequent in point of time

to the notice filed by the government), merely corrected the description of the real estate, no consideration having passed at that time. The record discloses that it was the clear intent of the Charles Henneman Company to secure the loan from the Johnsons by a mortgage on the north one half of the lot owned by the company and not by the property described in the original mortgage to the Johnsons.

The priority of the government's lien is only as to the excess of sale price over and above the sums due the First National Bank of Chippewa Falls and the Johnsons by virtue of their prior-recorded mortgages. After the amount available to apply on the federal tax lien has been set aside, state law is then applicable to determine the priorities between the mortgages and the real-estate tax-sale certificates. *Samms v. Chicago Title & Trust Co.* (1953), 349 Ill. App. 413, 111 N. E. (2d) 172; *River Rouge Savings Bank v. Victor Building Co., supra.* See for a discussion of the problem: 13 The Business Lawyer, Certain Aspects of the Priority of Tax Liens, pp. 639, 642; American Bar Asso. Section of Taxation (1959 meeting), Report of the Committee on Federal Tax Liens and Collection Proceedings, p. 149; 83 Reports of American Bar Asso. (1958), Report of the Special Committee on Federal Liens, p. 454.

*Distribution of the Proceeds of the Sale Price in the Hands of the Clerk of the Circuit Court.*

The trial court shall determine and set aside out of the proceeds of the sale price the total sum due and owing to the first mortgagee, First National Bank of Chippewa Falls, and the mortgagees, Andy Johnson and Violet Johnson, plus their respective interest, taxable costs, disbursements, and attorneys' fees. The balance of said money shall be paid to the United States government as and for complete liquidation of its lien and claim for unpaid federal taxes.

There being nothing left for distribution in so far as the real-estate tax lien is concerned under the federal law, we now

apply the state law as to priorities as between the First National Bank of Chippewa Falls, mortgagee, Andy and Violet Johnson, mortgagees, and Chippewa county real-estate tax lien.

### Priorities as Between Mortgagees and Real-estate Tax Liens Under State Law.

Sec. 70.01, Stats. 1951, provides:

"GENERAL PROPERTY TAXES; UPON WHOM LEVIED. Taxes shall be levied, under the provisions of this chapter, upon all general property in this state except such as is exempted therefrom. Real-estate taxes shall be deemed to be levied when the tax roll on which they are extended has been delivered to the local treasurer with his warrant for collection. When so levied such taxes shall be a lien upon the property against which they are assessed, superior to all other liens, effective as of May 1st in the year when levied, . . ."

"70.02 DEFINITION GENERAL PROPERTY. General property is all the taxable real and personal property defined in secs. 70.03 and 70.04 . . ."

"70.03 DEFINITION REAL PROPERTY. The terms 'real property,' 'real estate,' and 'land,' when used in this title, shall include not only the land itself but all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto."

"70.10 ASSESSMENT, WHEN MADE. The assessor shall begin as soon as practicable after the April election, if he is elected at such election, otherwise as soon as practicable after January first to assess all the real and personal property as of the close of the first day of May in each year. . . ."

"70.17 LANDS, TO WHOM ASSESSED; BUILDINGS ON EXEMPT LANDS. Real property shall be entered in the name of the owner, if known to the assessor, otherwise to the occupant thereof if ascertainable, and otherwise without any name. The person holding the contract or certificate of sale of any real property contracted to be sold by the state, but not conveyed, shall be deemed the owner for such purpose. The undivided real estate of any deceased person may be

entered to the heirs of such person without designating them by name. The real estate of an incorporated company shall be entered in the same manner as that of an individual. Improvements on leased lands may be assessed either as real property or personal property."

"70.32 REAL ESTATE, HOW VALUED. (1) Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. . . ."

This court has held in *Will of Koehring* (1939), 230 Wis. 533, 538, 284 N. W. 523:

". . . in the absence of a clear and unambiguous statute specifically denying the state's right of priority, its right thereto exists as to all taxes by virtue of the common law."

The amended complaint discloses that the real-estate taxes assessed for the years 1951, 1952, and 1953 were outstanding and unpaid.

In *Fitch v. Wisconsin Tax Comm.* (1930), 201 Wis. 383, 387, 230 N. W. 37, this court said:

"In the very opening sentence of Cooley on Taxation (3d ed.), we find it stated that 'Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs. The state demands and receives them from the subjects of taxation within its jurisdiction that it may be enabled to carry into effect its mandates and perform its manifold functions, and the citizen pays from his property the portion demanded, in order that, by means thereof, he may be secured in the enjoyment of the benefits of organized society. The justification of the demands is therefore found in the reciprocal duties of protection and support between the state and those who are subject to its authority, and the exclusive sovereignty and jurisdiction of the state over all persons and property within its limits for governmental purposes.'

"The exaction of a tax can only be justified from one who is enjoying the protection of government either for himself or for his property."

The statutes require that the entire real estate, including all mortgagors' and mortgagees' interests in it, be assessed as one unit. Accordingly, the rights of every person claiming any interest in the property by virtue of any lease, contract, mortgage, or otherwise are subject to the unpaid real-estate tax liens. *Aberg v. Moe* (1929), 198 Wis. 349, 224 N. W. 132, 226 N. W. 301.

Sec. 70.01, Stats., accords priority to general property taxes and when levied such tax liens have priority over all other liens which would include recorded mortgages. *River Rouge Savings Bank v. Victor Building Co., supra; Will of Koehring, supra.*

It therefore follows that the mortgage interests of the First National Bank of Chippewa Falls and Andy Johnson and Violet Johnson are subject to the payment of the outstanding taxes.

The trial court shall determine the amount of real-estate taxes due and unpaid on lots 4, 5, and 6, block 9, Allen's Addition, and they shall be paid in inverse order so as to maintain the integrity of the first mortgage. In other words, the taxes shall be paid out of the moneys set aside for the second mortgage and if such sum is not sufficient such remaining balance shall be paid out of the sums of money held for payment of the first mortgagee. The remainder of the properties are covered by a first mortgage held by the Johnsons, and are subject and chargeable for the taxes due on each respective parcel. Inasmuch as the proceeds of sale have been substituted for the land, any rights of subrogation of any of the parties should be preserved in the judgment. All rights to redeem from the sale of the mortgaged lands have in effect been waived by the stipulation.

The judgment of the trial court is reversed, with instructions to enter judgment in accordance with this opinion.

*By the Court.*—Judgment reversed, with instructions for the trial court to enter judgment in accordance with this opinion.