**UNITED STATES of America,
Plaintiff,**

v.

**DAVIS MINING ENTERPRISES, a limited partnership; Vernon C. Davis, as the sole general partner of said Davis Mining Enterprises; Donna Davis; the Eagle-Picher Company, an Ohio corporation; the Industrial Commission of Wisconsin, the Village of Linden, the Town of Linden, the County of Iowa, and the State of Wisconsin, Defendants.**

Civ. A. No. 2807.

United States District Court
W. D. Wisconsin.

Oct. 17, 1960.

George E. Rapp, U. S. Atty., by John C. Fritschler, Jr., Asst. U. S. Atty., Madison, Wis., for plaintiff.

McDaniel, McDaniel & Reinoehl, Darlington, Wis., for defendant Eagle-Picher Co.

W. H. Putnam, Madison, Wis., Industrial Commission, State of Wis., James P. Fiedler, Dist. Atty., Iowa County, Mineral Point, Wis., for defendants.

Robert D. Sundby, Madison, Wis., League of Wis. Municipalities, John F. Kitzke, Asst. City Atty., Milwaukee, Wis., amici curiæ.

STONE, District Judge.

This is a real estate foreclosure action. Plaintiff seeks judgment declaring its mortgage lien to be prior and superior to the real estate tax liens of defendants Town of Linden, the Village of Linden, Iowa County and the State of Wisconsin, arising out of the assessment of taxes against the mortgaged premises in the sum of $5,455.87 for the years of 1954, 1955 and 1956. The actual value of the mortgaged property does not exceed this amount.

Defendant Iowa County filed its answer to plaintiff's complaint and alleges that its taxes in the amount of $5,455.87 is based on a statutory lien under Section 74.01 of the Wisconsin Statutes and that these taxes constitute a lien prior to plaintiff's mortgage lien, based on its 1953 mortgage.

The facts have been stipulated by the plaintiff and the defendant Davis Mining Enterprises. The Court finds that the allegations in the complaint, except for the issue of the priority of the liens, is undisputed.

The one issue for the Court to determine is whether the lien created by the mortgage executed and delivered to the plaintiff in 1953 is superior to the liens of said defendants for taxes levied in the years 1954, 1955 and 1956.

Plaintiff contends that the Reconstruction Finance Corporation acted as an agent of the President with funds of the United States, and not under its own

Charter; that the note and mortgage were executed and delivered to plaintiff to secure the payment of $220,000 to the plaintiff; that the law of the State of Wisconsin cannot impair plaintiff's mortgage contract, nor can the State tax the Federal Government, citing United States v. Ringwood Iron Mines, Inc., D.C. 1957, 151 F.Supp. 421, 3 Cir., 1958, affirmed 251 F.2d 145, certiorari denied 1958, 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed. 2d 1148, as the controlling law to be applied to the facts herein.

The Ringwood case is practically analogous to the one before this Court. In that case the United States conveyed to Ringwood Iron Mines certain mining properties. A nominal cash payment was made by the purchaser and a note and real estate mortgage to secure the balance of the purchase price was executed and delivered by the mortgagor to the General Services Administration. The mortgage was duly recorded. The mines failed and as a result the real estate taxes assessed against the mortgaged premises were not paid to the Borough of Ringwood. The collector of taxes for the Borough advertised and sold at public auction the property, subject to the equity of redemption. The mortgagor had failed to meet its payments that became due as provided in the note and mortgage. The Court declared the issue for its determination to be [151 F.Supp. 422]: "Are liens for municipal taxes cut off by a judicial sale resulting from the foreclosure of a mortgage held by the General Services administrator?" The plaintiff contended that its claim took precedence by virtue of the principle "The first in time is the first in right". The Borough relied on a state priority statute, similar to the Wisconsin Statute, which provided that unpaid real estate taxes shall constitute a first lien, paramount to prior encumbrances. In its opinion the Court held that the Federal Government's priority does not stand on any sovereign prerogative, but is exclusively founded upon the actual provisions of the United States Statutes. In United States v. City of New Britain, 1954, 347

U.S. 81, 74 S.Ct. 367, 370, 98 L.Ed. 520, the Court applied the rule "first in time * * * first in right" in determining the priority between the statutory tax claims of the city and the Federal Government, holding (1) that the Federal law "does not grant permission to the states to interfere with a lien of the federal government by subsequent exercise of their taxing powers" citing United States v. City of Greenville, 4 Cir., 118 F.2d 963, at page 966; (2) that "a State cannot on behalf of its municipalities impair the standing of federal liens without the consent of Congress", again citing New Britain, supra; and (3) that, therefore, in the absence of contrary directions in the Federal Statutes, a lien in favor of the United States takes precedence over a later lien for municipal taxes.

The Court found that the only difference between the case of United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, and United States v. City of Greenville, 118 F.2d 966:

"* * * is that here the lien of the United States comes through the execution of the mortgage rather than resulting from the operation of law for the failure to pay taxes. We think that the doctrine enunciated in New Britain is broad enough to include this situation also."

The defendants assert that the Ringwood case is "far from over". There is no merit to this contention. The issues decided by the Court of Appeals for the Third Circuit will not be affected by the proceedings now pending in the Court of Claims. The statement on Page 6 in Plaintiff's brief relating to this assertion is not disputed by defendants, and reads as follows:

"Following the denial of certiorari by the Supreme Court, the Borough of Ringwood sought to secure passage by Congress of a bill for its private relief for the amount of its taxes involved in that case. Instead of passing the bill, Congress referred the case to the Court of Claims to examine the matter and

report back to Congress as to whether there was a legal or equitable basis for relief in favor of the Borough."

"In the Court of Claims case the Borough of Ringwood is relying only on two bases for relief: (1) that it is legally entitled to payments in lieu of taxes under the provisions of 40 U.S.C. 521 et seq.; and (2) that it is equitably entitled to payment of its taxes because of difficulties it will face if relief is denied. The first ground of relief was that referred to in the next to the last paragraph of the opinion of the Third Circuit, 251 F.2d at 147. The Court there declined to pass any opinion on such a basis for relief, since no such issue was before it. And, as noted, the second basis does not rest upon legal grounds but solely on equitable or moral grounds. If any equitable or moral basis for relief is found by the Court of Claims, it will not enter a judgment but merely report back to Congress with a recommendation which may or may not be followed.

"It is thus plain that the issues in the Court of Claims case are unrelated to those in the Ringwood case. Indeed the issues in the latter case could not be retried in the Court of Claims since the decision of the Third Circuit is now res judicata."

■ The defendants contend that 15 U.S.C.A. § 607 of the Federal Statutes makes real property of the RFC subject to local taxation to the same extent as other real estate. This Statute is not applicable. RFC cannot acquire property, being no longer in existence. This corporation was abolished by Section 6(a) of Reorganization Plan No. 1 of 1957, effective June 30, 1957 (22 F.R. 4633, 71 Stat. 647).

The owner of the mortgage involved in this action is the United States acting through the Treasury Department. The United States is not subject to 15 U.S. C.A. § 607. RFC at no time had any interest in plaintiff's mortgage. It acted only as the agent of the plaintiff to exe-cute to loan to Davis Mining Enterprises. The United States is the sole owner of the note and mortgage. See United States v. Buffalo Coal Mining Co., D.C.Alaska, 1959, 170 F.Supp. 727, and In the Matter of Premier Mill Corp., D.C. W.D.N.Y.1956, 171 F.Supp. 733.

■ A mortgage lien of the United States, like other contract rights of the United States, cannot be impaired by a state law without the consent of Congress. In United States v. Allegheny County, 322 U.S. 174, at page 183, 64 S.Ct. 908, at page 913, 88 L.Ed. 1209, the Court said:

"The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any State."

The defendants contend that in First National Bank of Chippewa Falls v. Charles Henneman Co. et al., 1960, 10 Wis.2d 260, 103 N.W.2d 24, the Government successfully argued the exact opposite of their contention here. This is not correct. The mortgages involved in that case were private mortgages, and therefore, the relative priority of the state tax liens was one of state law. In the instant case the mortgage was held by the United States and its rights are controlled by the federal law. United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264.

In Southwest Engine Co. v. United States, 10 Cir., 1960, 275 F.2d 106, a Small Business Administration mortgage was entitled to priority over a mechanic's lien, though under the applicable state law the mortgage would have been inferior. Finally, Rohr Aircraft Corporation v. County of San Diego, 1960, 362 U.S. 628, 80 S.Ct. 1050, 4 L.Ed.2d 1002, holds that real estate owned by the RFC and subject to local real estate taxes while under such ownership is no longer subject to such taxation after being declared surplus and when ownership

passes to the United States. This is true even though record title remains in the RFC. The loan and mortgage involved in this action were transferred to the United States prior to the taxes being levied.

It follows that the lien claims of the plaintiff United States herein are prior and superior to the subsequent tax liens of said defendants, and that defendants must give way to plaintiff's prior lien claim.

Plaintiff may have judgment against defendants as prayed for in its complaint.

Plaintiff may submit proposed findings and judgment in accordance with this memorandum opinion.